IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BING CHEN, *et al.*, | * |
| Plaintiffs, | * |
| v. | * Case No. TJS-23-1838 |
| COMMODORE MANAGEMENT COMPANY, INC., *et al.*, | * |
| Defendants. | * |

\* \* \* \* \*

**MEMORANDUM OPINION**

This case is assigned to me for all proceedings by the consent of the parties pursuant to 28 U.S.C. § 636(c). ECF No. 21. Pending before the Court is the Motion to Dismiss ("Motion") filed by Defendants Commodore Management Company, Inc. ("Commodore") and Woodmont Park, Inc. ECF No. 31. Having considered the parties' submissions (ECF Nos. 31, 34, & 35), I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the following reasons, the Motion will be granted.

**I.      Background**

Plaintiffs Bing Chen and Jie Chen ("Plaintiffs") are self-represented.[1] They filed this case to recover damages for alleged racial discrimination in housing. In response to Plaintiffs' initial Complaint (ECF No. 1), Defendants moved to dismiss for insufficient service of process (ECF No. 22). The Court construed Defendants' motion to dismiss as a motion to quash service, and ordered Plaintiffs to effect service on Defendants in compliance with Fed. R. Civ. P. 4 and Md. Rule 2-

---

[1] Plaintiffs appear to raise claims on behalf of themselves and their minor children. Because Plaintiffs cannot bring claims on behalf of their children, any claims brought on behalf of Plaintiffs' children will not be considered. *See Myers v. Loudoun Cnty. Pub. Sch.*, 418 F.3d 395, 401 (4th Cir. 2005) ("[N]on-attorney parents generally may not litigate the claims of their minor children in federal court.").

124. ECF No. 27. Plaintiffs then filed an Amended Complaint[2] (ECF No. 28), to which Defendants responded with the pending Motion (ECF No. 31). Defendants' Motion is ripe for decision.

## II.     Factual Allegations

The following allegations are accepted as true for the purpose of considering the Motion. Commodore is the landlord of the Woodmont Park Apartments ("WPA") in Rockville, Maryland. ECF No. 28 ¶ 2. Woodmont Park, Inc. owns WPA. *Id.* Plaintiffs immigrated to the United States from China in May 2014. *Id.* ¶ 5. In September 2014, Plaintiffs signed a lease with Commodore to rent Apartment Number 1819 in the WPA. Plaintiffs lived in Apartment Number 1819 from October 2014 until April 2023. *Id.*

Plaintiffs allege an array of purportedly discriminatory actions taken against them by Defendants. Starting from the beginning, Plaintiffs allege that Defendant did not give them a copy of the Landlord-Tenant Handbook, which they allege must be provided to tenants under the law of Montgomery County, Maryland. *Id.* ¶ 6.

---

[2] In the Amended Complaint, Plaintiffs request the appointment of counsel. ECF No. 28 ¶ 35. The mechanism for the appointment of counsel in civil cases is the *in forma pauperis* provision of 28 U.S.C. § 1915(e). Plaintiffs filed their complaint on July 7, 2023, and paid the full filing fee. ECF No. 1. Thus, the appointment of counsel is not available pursuant to 28 U.S.C. § 1915. Even if Plaintiffs had not paid the filing fee, the appointment of counsel would still not be warranted. In civil actions, the Court appoints counsel only in exceptional circumstances. *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). In doing so, the Court considers "the type and complexity of the case," whether the plaintiff has a colorable claim, and the plaintiff's ability to prosecute the claim. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984) (citations omitted), *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989). Exceptional circumstances include a litigant who "is barely able to read or write," *id.* at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008); *see also Altevogt v. Kirwan*, No. WDQ-11-1061, 2012 WL 135283, at *2 (D. Md. Jan. 13, 2012). As explained below, Plaintiffs lack a colorable claim. Even so, this is not a complex case and Plaintiffs clearly have the capacity to prosecute their case. This is not an exceptional case warranting the appointment of counsel. For these reasons, Plaintiffs' request for the appointment of counsel is denied.

In early 2016, Plaintiffs requested that Defendants repair the vanity in the bathroom of their apartment because it was rusted and contained a leaky water pipe. *Id.* ¶ 7. Defendants made the requested repair but then charged Plaintiffs $225.00 for it. *Id.* Plaintiffs allege that they "complained to Housing and Community Affairs, and they advised [Plaintiffs] to prosecute [Defendants]." *Id.*

In December 2017, Plaintiffs made an unspecified error on their rent check. *Id.* ¶ 8. Defendants then insisted that Plaintiffs pay their rent with money orders, and then sued Plaintiffs. *Id.* According to Plaintiffs, the substance of the lawsuit was to seek payment from Plaintiffs for the vanity repair for and "requesting to pay the rent with money order." *Id.* Plaintiffs state that the court "rejected" the lawsuit. *Id.*

In the following years, Plaintiffs' apartment required other repairs, including a broken refrigerator, garbage disposal, and lamp. *Id.* ¶ 9. Sometimes, Defendants promptly made the repairs that Plaintiffs requested (as they did for the refrigerator, garbage disposal, and lamp). But at other times, Defendants came to inspect the reported problems but did not make the requested repairs. *Id.* Plaintiffs assume that Defendants' failure to make all requested repairs was "revenge" for Plaintiffs' having complained about Defendants in 2016. *Id.*

In early 2021, Plaintiffs' apartment was "broken in many places." *Id.* ¶ 10. The bathroom door was broken, one of the bedroom doors wouldn't properly close, several window shutters were damaged, a cabinet would not close, and there were cracks in the kitchen wall and bathroom floor. *Id.* Plaintiffs asked Defendants to make repairs but Defendants declined to do so. *Id.* During the same time, Plaintiffs' apartment became infested with cockroaches. *Id.* ¶ 11. Defendants continued with their "uniform and routine extermination," but otherwise did not specially treat Plaintiffs' apartment. *Id.* Plaintiffs spent their own money on pest repellants. *Id.*

At some point, Plaintiffs asked to move to a different apartment. *Id.* ¶ 12. At Defendants' request, Plaintiffs submitted an application and paid a $15.00 application fee. *Id.* But when Defendants inspected Plaintiffs' current apartment, a staff member "pointed out that there were pictures posted and drawn on the wall by [Plaintiffs'] children." *Id.* Defendants cancelled the transfer application and refunded Plaintiffs' application fee. *Id.*

In protest of Defendants' conduct—including the cancellation of Plaintiffs' transfer application and the failure to properly treat the insect problem—Plaintiffs stopped paying rent. *Id.* ¶ 13. Plaintiffs "chose not to pay rent between March and July 2022 in protest." *Id.* After Defendants "repaired the main problems in the room" in July 2022, Plaintiffs again started paying rent (from August 2022 until April 2023). *Id.* Plaintiffs do not allege that they established a rent escrow account or that they paid the back-rent for March through July 2022.

Defendants filed several lawsuits against Plaintiffs for nonpayment of rent: in July 2022 (for nonpayment of rent due in March through July 2022); in September 2022 (for nonpayment of rent due in August through October 2022); in December 2022 (for nonpayment of rent due in November and December 2022); and in March 2023 (for nonpayment of rent due in January and February 2023). *Id.* ¶¶ 14-20. Plaintiffs allege that Defendants were only partially successful in some of these suits, that the landlord-tenant court failed to follow proper procedures, and that Plaintiffs did not always receive timely notice of court hearings. *Id.*

In March 2023, Plaintiffs learned that a court had issued an "Eviction Order." *Id.* ¶ 17. Plaintiffs allege that they were not notified of the hearing and that "no Eviction order was served." *Id.* When Plaintiffs offered to provide the court with proof of their payment of rent for August through October 2022, the court notified them that they would be "subject to sanctions if representations are incorrect." *Id.* ¶ 19 (text converted to title case).

Defendants served Plaintiffs with a "Notice to Quit and Vacate" on March 27, 2023. *Id.* ¶ 21. The notice provided that Plaintiffs could be subject to eviction by the Sheriff's Department before the termination date of May 31, 2023. *Id.* Plaintiffs allege that this notice was unlawful. *Id.*

On April 18, 2023, Defendants notified their tenants that "they wanted pest control services and required prior preparation." *Id.* ¶ 22. Because Plaintiffs' apartment was not properly prepared, Defendants issued them a $50.00 fine. *Id.*. Plaintiffs allege that no other tenants were fined (but they do not allege that any other tenants were in violation of Defendants' pest control preparation requirements). *Id.*

Plaintiffs moved out of their WPA apartment at the end of April 2023. *Id.* ¶ 21. Soon thereafter, Defendants filed another lawsuit (this time for nonpayment of rent due in March and April 2023). *Id.* ¶ 23. Defendants apparently voluntarily dismissed the lawsuit, but Plaintiffs did not learn of the dismissal until they appeared in court. *Id.*

Plaintiffs allege that "[r]acial discrimination in the United States is deeply rooted," and that Chinese people have been the subject of discrimination in the United States from the 19th century through the present. *Id.* They allege that Defendants discriminated against them because Plaintiffs are "new immigrants from China" who are not fluent in English and "because of the kids." *Id.* ¶ 29. They allege that they have been harmed by Defendants' discriminatory conduct and seek $16.8 million in damages. *Id.* ¶ 33.

Plaintiffs summarize Defendants' illegal conduct: Defendants did not provide Plaintiffs with the landlord-tenant handbook; Defendants asked Plaintiffs to pay $225.00 for a vanity replacement; Defendants required Plaintiffs to pay rent through money orders; Defendants retaliated against Plaintiffs for filing a fair housing complaint; Defendants failed to maintain or repair Plaintiffs' apartment, even after Plaintiffs notified Defendants about broken appliances and

fixtures; Defendants did not timely respond to Plaintiffs' requests for the extermination of cockroaches and rodents; Defendants cancelled Plaintiffs' transfer application because Plaintiffs' children had posted pictures and drawn on the wall of Plaintiffs' apartment; Defendants brought "[f]ive false prosecutions in one case" against Plaintiffs, which sought an amount in excess of the disputed rent; Defendants committed perjury, obstructed justice, and may have committed a criminal offense; Defendants deliberately failed to serve Plaintiffs with notice of an eviction order hearing and "us[ed] false information to deceive the court about the order"; Defendants sought to depose Plaintiffs without allowing Plaintiffs to make "psychological preparations," resulting in the humiliation of Plaintiffs and their children; Defendants filed "false lawsuits"; Defendants dismissed a lawsuit without notice; Defendants illegally threatened Plaintiffs with eviction; Defendants filed and withdrew a lawsuit "many times"; and Defendants imposed a $50.00 fine against Plaintiffs for being unprepared for a pest clean-out. *Id.* ¶ 30. Plaintiffs characterize Defendants' actions as "obviously intentional and illegal" racial discrimination. *Id.*

**III.     Discussion**

Defendants argue that Plaintiffs' claims must be dismissed for failure to state claims upon which relief can be granted and because the claims are barred by the statute of limitations. ECF No. 31-1.

    **A.     Legal Standard**

Rule 12(b)(6) permits a court to dismiss a complaint if it fails to "state a claim upon which relief can be granted." "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, [and not to] resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is

6

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal quotation marks omitted). And a complaint must consist of "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). When considering a motion to dismiss, a court must accept as true the well-pled allegations of the complaint and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). While a court must take the facts in the light most favorable to the plaintiff, it "need not accept the legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint generally "does not need detailed factual allegations." *Id.* So long as the factual allegations are "enough to raise a right to relief above the speculative level," the complaint will be deemed sufficient. *Id.* A "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that a recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

**B.  Analysis**

Because Plaintiffs are self-represented, the Court will liberally construe the allegations of the Amended Complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985). Plaintiffs contend that Defendants discriminated against them because they are Chinese, in violation of the Fair Housing Act

7

("FHA"), 42 U.S.C. § 3601 *et seq.*[3] The FHA prohibits discrimination "against any person in the terms, conditions, or privileges of . . . rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b).

### 1. Elements of FHA Discrimination

To state a claim for FHA discrimination based on race or national origin, a plaintiff must allege that the defendant engaged in a discriminatory housing practice against the plaintiff on the basis of race or national origin. A plaintiff may allege that the unlawful practice was either (1) motivated by a discriminatory purpose (disparate treatment) or (2) had a discriminatory impact (disparate impact). *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 421 (4th Cir. 2018). An "FHA claim can proceed under either a disparate-treatment or a disparate-impact theory of liability, and a plaintiff is not required to elect which theory the claim relies upon at pre-trial, trial, or appellate stages." *Id.* at 421. "Therefore, for purposes of a motion to dismiss for lack of legally cognizable discrimination, the court must discern if either predicate theory of discrimination is sufficiently pled." *Nat'l Fair Hous. All. v. Bank of Am., N.A.*, 401 F. Supp. 3d 619, 630 (D. Md. 2019).

While a plaintiff need not plead a prima facie case of discrimination to survive a motion to dismiss, *see Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002), a plaintiff is "required to allege facts to satisfy the elements of a cause of action created by that statute." *Bing v. Brivo Sys.,*

---

[3] Plaintiffs also allege that Defendants are in contempt of court under 18 U.S.C. § 401 and have made false statements, presumably in violation of 18 U.S.C. § 1101. Because neither of these statutes create private rights of action, Plaintiffs' claims for contempt of court and false statements must be dismissed. *See Doe v. Broderick*, 225 F.3d 440, 447 (4th Cir. 2000) (explaining that the "Supreme Court historically has been loath to infer a private right of action from a bare criminal statute") (internal quotation marks omitted).

*LLC*, 959 F.3d 605, 616 (4th Cir. 2020); *Connolly v. Lanham*, No. SAG-22-02048, 2023 WL 4932870, at *4 (D. Md. Aug. 2, 2023); *see also Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (explaining that a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level"). Courts routinely reference the elements of a prima facie case as "a helpful guide in assessing the adequacy of the allegations." *Niner v. Garrett Cnty. Pub. Works*, No. ELH-17-2948, 2018 WL 3869748, at *16 (D. Md. Aug. 15, 2018).

### 2. Disparate-Treatment Theory of Discrimination

Under a disparate-treatment theory of liability, a "plaintiff must establish that the defendant had a discriminatory intent or motive." *Id.* To state a prima facie case of discrimination using a disparate treatment theory, Plaintiffs must show that they are members of a protected class and that Defendants treated them differently than other tenants because of Plaintiffs' protected status. *Adams v. Cameron*, No. TDC-20-3739, 2021 WL 5280978, at *5 (D. Md. Nov. 12, 2021) (citing *Roberson v. Graziano*, No. WDQ-93038, 2010 WL 2106466, at *2 (D. Md. May 21, 2010)). For a disparate-treatment claim, "[p]roof of discriminatory motive is critical." *Inclusive Communities*, 576 U.S. at 566 (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)).

The Court accepts as true that Plaintiffs are members of a protected class and that Defendants took adverse actions against them. But Plaintiffs have not plausibly alleged that Defendants treated them differently than other tenants because of their race or national origin. The Amended Complaint has no facts suggesting a nexus between Defendants' conduct and Plaintiffs' protected status. Plaintiffs merely speculate that Defendants treated them differently because of their race or national origin. And they conclude—without any factual support—that the only explanation for Defendants' actions is racial discrimination. Plaintiffs' sparse conclusions assigning racial animus to Defendants are insufficient to raise their right to relief above a

speculative level. Even accepting all of the allegations of the Amended Complaint as true, Plaintiffs have not plausibly alleged that Defendants discriminated against them on the basis of race or national origin under a disparate-treatment theory of discrimination.

### 3.     Disparate-Impact Theory of Discrimination

"[A] plaintiff bringing a disparate-impact claim challenges practices that have a disproportionately adverse effect on minorities and are otherwise unjustified by a legitimate rationale." *Reyes*, 903 F.3d at 421 (citation omitted); *Inclusive Communities*, 576 U.S. at 524. To plausibly allege an FHA disparate impact claim, a plaintiff must allege a "robust causal connection between the defendant's challenged policy and the disparate impact on the protected class." *Reyes*, 903 F.3d at 424. "A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Id.* (quoting *Inclusive Communities*, 576 U.S. at 543).

Plaintiffs have made no allegations that would allow the Court to find that Defendants violated the FHA under a disparate impact theory.[4] They have not alleged facts that would support such a theory, and they have not alleged the existence of statistical evidence (or even anecdotal evidence) that might show discrimination by disparate impact. The Amended Complaint is devoid

---

[4] In their response to the Motion, Plaintiffs state that they "are aware of other Chinese tenants who have also raised concerns about discriminatory actions by the defendants, lending support to our lawsuit and implying that such actions might be less likely to be directed at Chinese tenants in the future." ECF No. 34 at 4. But Plaintiffs have not sought leave of Court to further amend their complaint to include these allegations. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *Hurst v. D.C.*, 681 F. App'x 186, 194 (4th Cir. 2017) (unpublished) ("[A] plaintiff may not amend her complaint via briefing."); *Familia v. High*, No. TDC-21-1139, 2022 WL 899747, at *7 (D. Md. Mar. 28, 2022) (explaining that a plaintiff "may not amend the complaint through an argument in her brief in opposition to a motion to dismiss"). And they have not provided any detail about the nature of these "concerns" or how they relate to Plaintiffs' claims.

of plausible allegations that Defendants' actions or policies had a disproportionately adverse effect on minorities, that they are unjustified by a legitimate rationale, and that there is a causal connection (let alone a robust one) between Defendants' actions and the effect of the actions on Plaintiffs' class. Even accepting all of the allegations of the Amended Complaint as true, Plaintiffs have not plausibly alleged that Defendants discriminated against them on the basis of race or national origin under a disparate-impact theory of discrimination

### 4. Retaliation

Plaintiffs have also failed to state a plausible claim for FHA retaliation. To state a claim for retaliation under 42 U.S.C. § 3617, a plaintiff must establish that (1) he was engaged in protected activity; (2) the defendant knew about that activity; (3) the defendant took adverse action against the plaintiff; and (4) a causal connection existed between the protected activity and the asserted adverse action. *King v. Rumsfeld*, 328 F.3d 145, 150–51 (4th Cir. 2003) (explaining that much of the Fourth Circuit's FHA jurisprudence draws on cases interpreting Title VII because the two statutes are "part of a coordinated scheme of federal civil rights laws enacted to end discrimination") (citations omitted).

Plaintiffs allege that Defendants retaliated against them for filing a fair housing complaint. ECF No. 28 ¶ 30(4). Plaintiffs do not provide any details about the nature of their fair housing complaint, how Defendants learned about the complaint, what specific actions Defendants took against Plaintiffs for making the complaint, or the causal connection between Plaintiffs' complaint and Defendants' adverse actions. Plaintiffs' only allegations about their fair housing complaint are that Plaintiffs complained to "Housing and Community Affairs" in 2016 about being charged $225.00 by Defendants for the repair of a broken bathroom vanity and were advised to "prosecute the defendant." *Id.* ¶ 7.

Plaintiffs' retaliation claim is threadbare and speculative, and it fails to allege the required elements of the statute. Even assuming that Plaintiffs' 2016 complaint to "Housing and Community Affairs" was protected activity under the FHA, Plaintiffs have not plausibly alleged that Defendants knew of that activity or that there was a causal connection between the activity and Defendants' actions. As to Defendants' knowledge of Plaintiffs' protected activity, there is no indication that Defendants knew about Plaintiffs' complaint until this lawsuit was filed (about seven years later). Without an allegation about when Defendants learned of Plaintiffs' protected activity, Plaintiffs' retaliation claim is implausible. By definition, a landlord cannot retaliate against a tenant for protected activity about which the landlord has no knowledge.

But even assuming that Defendants knew of Plaintiffs' protected activity soon after the 2016 complaint was made, the temporal distance between the protected activity and Defendants' adverse actions are too remote to be plausibly related. To explain why this is the case, the Court must address the FHA's statute of limitations.

The FHA has a two-year statute of limitations. 42 U.S.C. § 3613(a)(1)(A) ("An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . ."). A plaintiff can challenge an ongoing unlawful practice that extends into the limitations period, even if some of the adverse actions occurred more than two years before the complaint was filed. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982); *see also Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc.*, 40 F. Supp. 2d 700, 710 (D. Md. 1999). The statute of limitations does not bar these earlier actions, provided the complaint is filed within two years of the most recent occurrence of the unlawful practice. *Id.*

Plaintiffs do not allege a continuous unlawful practice like the "continuing policy of racial steering" that triggered application of the continuing violations doctrine in *Havens*. *See Bailey v. Queen's Landing Council of Unit Owners, Inc.*, No. ABA-23-1559, 2023 WL 8829201, at *8 (D. Md. Dec. 21, 2023) (citing *Baltimore Neighborhoods*, 40 F. Supp. 2d at 710). Instead, Plaintiffs allege a litany of isolated events that occurred sporadically over time, none of which are tied to any one unlawful practice. Plaintiffs' only timely claims are those that occurred on or after July 7, 2021, which is two years before Plaintiffs filed their initial Complaint (ECF No. 1), and five years after they made their fair housing complaint.

The significant time gap between Plaintiffs' protected activity and the alleged adverse actions that form the basis of their timely claims under the FHA makes any suggestion of causality implausible. The Fourth Circuit has rejected FHA claims based on much closer temporal proximity. *See Hall v. Greystar Mgmt. Servs., L.P.*, 637 F. App'x 93, 99 (4th Cir. 2016) (rejecting a retaliation claim because of a 10-month lapse between the protected activity and adverse action, explaining that "a court will not infer a causal link based on temporal proximity alone unless the adverse action occurred very close to . . . or shortly after the defendant became aware of the protected activity") (internal quotation marks and citations omitted). Plaintiffs' claims that Defendants filed lawsuits against them for nonpayment of rent in 2022 and 2023 because of a complaint that Plaintiffs made in 2016 regarding a $225.00 repair bill are implausible.

For these reasons, I find that Plaintiffs have failed to state a claim for FHA retaliation.

## IV.     Other Motions

Several other motions are pending before the Court: Plaintiffs' first Motion to Sanction the Defendants (ECF No. 33); Plaintiffs' second Motion to Sanction the Defendants (ECF No. 36); Plaintiffs' Motion to Enter Discovery (ECF No. 37); and Plaintiffs' Motion to Expedite Litigation

Process (ECF No. 39). These motions are procedurally improper and without legal basis. But most importantly, they are moot because Plaintiffs' claims will be dismissed. Accordingly, Plaintiffs' motions (ECF Nos. 33, 36, 37 & 39) will be denied as moot.

## V.     Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED** and this case is **DISMISSED.** An Order will be docketed separately.


Date: June 10, 2024                               /s/
                                            Timothy J. Sullivan
                                            Chief United States Magistrate Judge